**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| PETER B. HUTTON,<br><br>               Plaintiff,<br><br>    v.<br><br>JERALD L. NYHART,<br><br>               Defendant. | CV-17-82-BU-BMM<br><br><br><br>ORDER |

This dispute involves a series of motions filed by Plaintiff Peter B. Hutton ("Hutton") and Defendant Jerald L. Nyhart ("Nyhart") regarding the purchase and leaseback of agricultural property located in Madison County and Beaverhead County in southwestern Montana. The Court conducted a hearing at the Mansfield Courthouse in Butte, Montana on February 28, 2019. The Court will address first facts common to each motion and then address each motion in turn.

## FACTUAL BACKGROUND

The Court hesitates to designate this section as undisputed facts as the parties agree on little about what transpired over the past fourteen years. The

Court instead will characterize competing allegations by the parties where appropriate. The ubiquity of these competing allegations highlights the Court's difficulty in analyzing the claims for summary judgment.

Nyhart formerly owned the agricultural property at issue. Nyhart listed the property with a realtor with an asking price of $1,550,000 in 2004. (Doc. 30 at ¶¶ 5-7). Hutton inquired about purchasing the property. Nyhart eventually sold the property to Hutton for the price of $648,069.04. Nyhart alleges that this reduced price reflected the favorable terms that Hutton afforded to Nyhart on a lease-back of the agricultural property and the residential portion of the property. *Id.* at ¶ 10.

Hutton and Nyhart entered a written Sales Agreement drafted by Hutton. Nyhart alleges that Hutton promised to upgrade the irrigation system on the property as a material term to the Sales Agreement. Hutton never replaced the irrigation system, but he did make repairs to the system in 2005. Nyhart alleges that the irrigation system ultimately failed and that its failure caused him to suffer financial loss. *Id.* at ¶¶ 17-19.

Nyhart met Hutton in Kalispell, Montana on April 1, 2005, when they both executed the Farm Lease and the Residential Lease. The Farm Lease term on the agricultural portion of the property ran for a period of five years from January 6, 2005 to January 5, 2010. (Doc. 1 at ¶ 7). The Farm Lease provided for an initial term of rent at $1,000 per year. *Id.* at ¶ 8. The Farm Lease provided that Nyhart

would pay all property taxes on the agricultural property and would maintain insurance coverage. The Residential Lease provided that Hutton would lease the house and related outbuildings to Nyhart for a period not to exceed fifty years from the date of closing. *Id.* at ¶ 11.

The Farm Lease includes a holdover clause that specifically prohibits a subsequent year-to-year lease upon completion of the leased term. *Id.* at ¶ 10. The clause instead provides that "a year to year lease shall not be created . . . but the same shall be a tenancy from month to month at a monthly rental calculated on the basis of one thousand times ("1000x") the amount of money rent being paid hereunder at the date of termination." *Id.*

Shortly after the meeting in Kalispell, Nyhart borrowed $72,606.60 from Hutton. The parties executed a Security Agreement that is also at issue. The parties dispute the terms of the Security Agreement as well as the purpose of the underlying loan. Nyhart contends that the Security Agreement served the sole purpose of securing the $72,606.60 debt and that he repaid this debt in full on December 31, 2005. (Doc. 30 at ¶¶ 20-21). Hutton counters that the Security Agreement protected him from Nyhart's failure to perform under the terms of the Farm Lease and entitles him to possession of Nyhart's farm equipment, inventory, and related accounts that served as collateral for the loan. (Doc. 1 at ¶¶ 11-12).

Nyhart remained on the property after the expiration of the initial five-year term of the Farm Lease in 2010.  The parties never executed any written agreement regarding Nyhart's continued possession of the property.  Hutton apparently made some repairs to the irrigation system over the years, but never replaced it as Nyhart claims Hutton had promised to do.  Hutton eventually sent Nyhart an eviction notice on August 1, 2017.  Nyhart left the property on December 31, 2017.

Hutton filed a complaint against Nyhart on November 3, 2017.  (Doc. 1). Hutton alleges that Nyhart has breached the terms of the Farm Lease and seeks to recover $771,233.33 in past due rent.  *Id.* at ¶ 22.  In the alternative, and to the extent that the Farm Lease proves invalid and unenforceable, Hutton claims that Nyhart has been unjustly enriched by his continued occupation of the property and seeks to recover in quantum meruit.  *Id.* at ¶¶ 25-26.  Hutton finally seeks to claim the collateral that he alleges attaches to the Security Agreement.  *Id.* at ¶¶ 30-34. Nyhart answered the complaint and filed a counterclaim on March 28, 2018.  (Doc. 30).  Nyhart's counterclaim alleges eight causes of action and also seeks punitive damages.  *Id.*  Nyhart demands a jury trial.

## I.  Hutton's Motion for Partial Summary Judgment (Doc. 33)

Summary Judgment is appropriate where the movant demonstrates that no genuine dispute exists "as to any material fact" and the movant is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 5(a); *see also Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986). A motion for partial summary judgment is appropriate in order to "isolate and dispose of factually unsupported claims or defenses." *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F.Supp.2d 1244, 1250 (N.D. Cal. 2008) (*quoting Celotex*, 477 U.S. at 323). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-23. If the moving party satisfies that burden, summary judgment shall be granted unless the non-moving party demonstrates "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

Hutton has filed a motion for summary regarding all of Nyhart's counterclaims; Nyhart's Fifth Affirmative Defense of Accord and Satisfaction; Nyhart's Seventh Affirmative Defense of Failure of Consideration/Excuse of Performance; and Nyhart's Eleventh Affirmative Defense under Montana Code Ann. § 70-27-108(2). (Doc. 33). Nyhart concedes that Hutton is entitled to summary judgment on the Fifth Affirmative Defense of Accord and Satisfaction. *Id.* Nyhart opposes the remainder of Hutton's motion. (Doc. 62). The Court grants the motion with respect to Nyhart's Fifth Affirmative Defense of Accord and Satisfaction.

A. Nyhart's Counterclaims

Nyhart claims that Hutton made numerous false representations of fact to Nyhart. Hutton allegedly represented that he would pay to install a modern pivot irrigation system. (Doc. 30 at 16-17). Nyhart claims to have understood that he would hold a lifetime lease on the residential portion of the Ranch. *Id.* Other representations include, among other things, Nyhart's understanding that he was not responsible to make rent payments or to obtain receipts from Hutton unless told otherwise. Nyhart claims also that Hutton led him to believe that the legal documents drafted by Hutton and his attorney considered the best interest of both parties. Nyhart further contends that Hutton did not take issue with Nyhart's continued occupation of the agricultural land after January 5, 2010. Finally, Nyhart suggests that he was not obligated to pay the 1000x monthly rent pursuant to the Holdover Provision after January 5, 2010. *Id.* Nyhart claims that these representations proved to be false, that Hutton knew the representations were false, and that Hutton made the representations for the purpose of inducing Nyhart to sell the property at a significantly reduced price. *Id.* at 17.

Nyhart asserts that Hutton's promises with regard to the new pivot system amounts to fraud and constructive fraud. *Id.* 17-18. Nyhart also asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel arising out of Hutton's promise. *Id.* at 19-22. Nyhart

seeks the rescission of the parties' contract due to Hutton's alleged failure to keep his promise to provide a new pivot system. *Id.* at 24-25.

Hutton argues that he properly fulfilled his promise to "fix" the pivot system, but that the counterclaims lack reviewability because each counterclaim remains time-barred by the relevant statute of limitations under Montana. (Doc. 34 17-23). Nyhart counters that Montana law provides, however, a discovery rule that tolls a relevant statute of limitations. In the context of fraud or mistake a claim is "not to be deemed to have accrued until discovery by the aggrieved party of the facts constituting the fraud or mistake." Mont. Code Ann. § 27-2-203. This doctrine applies when the injury was inherently self-concealing or if the defending party concealed facts relating to the injury from the injured party. *Wilson v. Brandt*, 2017 MT 290, ¶ 17, 389 Mont. 387, 393-94, 406 P.3d 452, 456.

Nyhart claims that Hutton took action to "prevent Nyhart from discovering the injury [and] affirmatively and fraudulently misrepresented – and continued to renew and reiterate such misrepresentation – that he would eventually replace the Existing Pivot." (Doc. 62 at 16). Hutton claims that he sufficiently fulfilled his promise by "fixing" the pivot system. (Doc. 34 at 15). All the counterclaims brought by Nyhart arise out of this same transaction or occurrence of the alleged promises and reciprocal obligations required pursuant to the sale/lease-back agreement between the parties. The parties clearly dispute the issues regarding

what each side promised and understood throughout Hutton and Nyhart's relationship. The existence of these disputed issues of material fact preclude summary judgment and these competing claims must be resolved by the jury. The Court denies Hutton's motion for summary judgement on Nyhart's counterclaims.

### B. Nyhart's Seventh Affirmative Defense of Failure of Consideration and Excuse of Performance

Nyhart's seventh affirmative defense for failure of consideration and excuse of performance arise from the same facts and allegations regarding the pivots as noted above. Nyhart alleges that Hutton failed to perform his duties as promised under the agreements surrounding the sale/lease-back agreement. (Doc. 30 at ¶ 7). Nyhart argues that Hutton's failure to perform consequently excuses him from performing his own duties under the agreement. *Id.* Hutton claims that he agreed only to fix the pivot system and that he completed this task when he repaired the Existing Pivot. (Doc. 34 at 15).

The issues regarding what each party promised and what each party understood in relation to the sale/lease-back agreement remain disputed and resolution of these genuine issues of material fact will be left to the jury. The Court denies Hutton's motion for summary judgment on Nyhart's seventh affirmative defense.

### C. Nyhart's Eleventh Affirmative Defense based on Montana Code Annotated §70-27-108(2)

Section 70-27-108(2) of the Montana Code provides a definition of unlawful detainer and an explanation of how this principle should be applied to a holdover

tenant of agricultural property. The section specifically provides that "when a tenant continues in possession . . . without permission of the landlord . . . [and] the tenant has held over and retained possession for more than 60 days after expiration of the term without any demand of possession or notice to quit by the landlord . . . the tenant is considered to be holding by permission." Mont. Code Ann. § 70-27-108(2).

Hutton argues that Mont. Code Ann § 70-27-108(2) has no application here as it simply defines unlawful detainer and Hutton is not seeking possession of the agricultural property. (Doc. 34 at 31). Hutton contends also that Nyhart did not maintain possession of the agricultural property after 2010 "without permission of the landlord." Hutton suggests instead that Nyhart retained possession of the agricultural property with Hutton's knowledge and permission under the terms of the Holdover Provision of the Farm Lease. *Id.* at 31-32.

Nyhart points to what he interprets as a presumption in § 70-27-108(2). He contends that a tenant properly holds possession by permission of the landlord when a landlord has failed to institute unlawful detainer proceedings by failing to make a demand of possession or notice to leave for more than sixty days after the alleged "holdover." (Doc. 62 at 31). Nyhart concedes that Hutton has not pursued an unlawful detainer action. Nyhart contends Hutton's failure proves the point of Hutton's intent to grant Nyhart implicit permission to remain. *Id.* Nyhart asserts

that Hutton's failure to collect rent for more than ten years has ripened into what amounts to a waiver by Hutton to collect the accrued rent pursuant to Mont. Code Ann. § 70-27-108(2). *Id.* at 32.

The parties' disputed understanding in relation to Nyhart's alleged holdover status remains an issue of material fact to be resolved by the jury. The Court denies Hutton's motion for summary judgment on Nyhart's eleventh affirmative defense. This issue will be reserved for trial.

## I. Nyhart's Motion for Summary Judgment by Application of Affirmative Defenses (Doc. 38)

Nyhart seeks summary judgment on all claims in Hutton's complaint based on application of the following affirmative defenses: estoppel, waiver, statute of limitations, laches, unconscionability, and by operation of Mont. Code Ann. § 70-27-108(2). Hutton opposes the motion. (Doc. 67).

### A. Estoppel

The common law doctrine of equitable estoppel derives from the principle that "a party cannot, through his intentional conduct, actions, language, or silence, induce another party to unknowingly and detrimentally alter his position and then subsequently deny the just and legal consequences of his intentional acts." *Anderson v. Stokes*, 2007 MT 166, 43, 338 Mont. 118, 129, 163 P.3d 1273, 1281 (*quoting Kelley v. Wallace*,1998 MT 307, 40, 292 Mont. 129, 138, 972 P.2d 1117, 1123); *see also Germain v. Am. Int'l Grp., Inc.,* 2008 WL 11347705, *3 (D. Mont.

2008).  The party asserting equitable estoppel must establish the following six

elements: (1) conduct, acts language, or silence amounting to a representation or

concealment of material facts; (2) the facts must be known to the party estopped at

the time of his conduct; (3) the truth concerning the facts must be unknown to the

party claiming the benefit of the estoppel at the time it was acted upon him; (4) the

conduct must be done intentionally, or with a reasonable expectation that it would

be acted upon; (5) the conduct must have been relied upon by the party seeking

equitable estoppel; and (6) the party seeking equitable estoppel must have in fact

relied upon the conduct so as to cause change to that party's position for the worse.

*Anderson,* 163 P.3d at 1281 (*quoting Kelley*, 972 P.2d at 1123).

Hutton informed Nyhart that "with respect to any rents due for which I may

or may not cash your checks, I tell you now that I consider all payments due as

paid in full unless I advise you otherwise."  (Docs. 39 at 14; 67 at 29; 43-17 at 3).

Nyhart alleges that Hutton meant by this statement to relieve Nyhart of any

obligation to pay rent for the Farm Lease unless advised otherwise.  (Doc. 39 at

14).  Nyhart claims that his reliance on Hutton's statement and its meaning proved

reasonable and foreseeable.  *Id.*  Hutton argues that this statement "clearly applied

to past rent, not as a complete waiver to collect any future rent."  (Doc. 67 at 29).

What this statement meant and whether Nyhart's reliance on it proved reasonable

remains a disputed question of fact that will be left for the jury to decide. The Court denies summary judgement on Nyhart's affirmative defense of estoppel.

B. Waiver

Waiver constitutes "a voluntary and intentional relinquishment of a known right, claim or privilege[.]" *In re Petition to Transfer Territory from Poplar elementary Sch. Dist. No 9*, 2015 MT 278, ¶ 14, 381 Mont. 145, 149, 364 P.3d 1222, 1225. Waiver "may be provided by express declarations or by a course of acts and conduct that induces the belief that the intent and purpose was waiver." *Id.* Waiver constitutes a question of intent and should be manifested unequivocally. *Idaho Asphalt Supply v. State*, 1999 MT 291, ¶ 23, 297 Mont. 66, 991 P.2d 434.

At issue here is the same statement at issue in the affirmative defense of estoppel. Nyhart argues that Hutton's statement regarding rent due represented an express declaration that Hutton had relinquished a known right to receive rent from Nyhart. (Doc. 39 at 15); (Doc. 40 ¶ 24). Nyhart notes that Hutton's failure to demand or seek to collect rent similarly demonstrates Hutton's waiver of this right. (Doc. 39 at 15). Hutton argues that the explicit language in the 2006 email regarding rent due clearly establishes that he had not intended the statement as an unequivocal waiver to never collect any rent. (Doc. 67 at 29). Hutton claims that the email served only to forgive Nyhart's debts as of August 2006. *Id.* Hutton

notes that the email served this purpose as he now does not seek damages of any debts due before August 2006. *Id.* at 30.

The meaning of the statement in the 2006 email remains a disputed issue of fact that must be reserved for the jury to decide at trial. The Court denies Nyhart's motion for summary judgement on the affirmative defense of waiver.

C. Statute of Limitations

The period of limitations under Montana law begins when the claim or cause of action accrues unless otherwise provided by statute. Mont. Code Ann. § 27-1-102(2). The statutory period prescribed for the commencement of an action premised upon a contract founded upon an instrument in writing is within eight years. Mont. Code Ann. § 27-2-202(1). The period prescribed for the commencement of an action upon a contract, account, or promise not founded on an instrument in writing is within five years. Mont. Code Ann. § 27-2-202(2). The period prescribed for the commencement of an action upon an obligation or liability, other than a contract, account, or promise, not founded upon an instrument in writing is within three years. Mont. Code Ann. § 27-2-202(3).

Nyhart claims the statute of limitations has run on Hutton's first claim for breach of a written contract. (Doc. 39 at 17). Nyhart supports this assertion with the undisputed fact that Nyhart stopped paying rent under the Farm Lease after June 2006. *Id.* at 18. Nyhart believes any claim for breach of the Farm Lease

would have accrued in April 2007. *Id.* Nyhart contends that the eight-year statute of limitations for a written contract would have run in April 2015. Hutton did not file this action until 2017.

Hutton argues that the statute of limitations has not run because Nyhart made a partial rent payment in 2016. (Doc. 67 at 24). This partial payment, according to Hutton, reset the relevant statute of limitations. *Id.* Nyhart's partial payment came in 2016 for the sum of $18,223.03 without Nyhart indicating for which years or to which lease it was to be applied. Hutton applied this payment to both the Farm and Residential Leases. The issue of when the statute of limitations accrued will be reserved for trial following further factual development. The Court denies without prejudice Nyhart's motion for summary judgement on the statute of limitations issue.

D. Laches

The Montana Supreme Court has defined laches as an equitable remedy that exists when a claimant "has unreasonably delayed or been negligent in asserting a claim, when the delay or negligence has prejudiced the party against whom relief is sought." *Algee v. Hren*, 2016 MT 166,  8-9, 384 Mont. 93, 96, 375 P.3d 386, 389 (*quoting Anderson*, 163 P.3d 1273). The Montana Supreme Court has established the following two elements to determine whether laches applies: (1) the party against whom the defense is asserted lacked diligence in asserting a claim; and (2)

the lack of diligence resulted in prejudice to the party asserting the defense. *Id.* at 389.

Nyhart argues that laches applies here in light of Hutton's failure to raise an issue about rent, paid or unpaid, between 2006 and 2016. (Doc. 39 at 20). Hutton allowed Nyhart to remain on the agricultural property and continue his agricultural operations and occupation for over ten years before making a demand for back rent. *Id.* at 21. Nyhart argues that Hutton's choice to wait a decade before seeking back rent illustrates Hutton's lack of diligence in taking action and that this inaction caused prejudice to Nyhart. *Id.*

Hutton disputes Nyhart's claim that Hutton failed to raise any issue about rent, paid or unpaid, between 2006 and 2016. (Doc. 67 at 29). This fact proves material to the defense of laches and must be reserved for the jury to determine at trial. The Court denies Nyhart's motion for summary judgement as applied to the defense of laches.

E. Unconscionability

To demonstrate that a contract is unconscionable, a party must establish that the following elements are met: (1) the contract or term is a contract of adhesion, and (2) the contract or term unreasonably favors the stronger party or is unduly oppressive to the weaker party. *Lenz v. FSC Sec. Corp.,* 2018 MT 67, ¶ 26, 391 Mont. 84, 97, 414 P.3d 1262, 1274. A contract of adhesion exists if a party with

superior bargaining power dictates the contracts terms, and the weaker party is left with no reasonable opportunity to negotiate. *Id.*

Nyhart claims the Farm Lease represents a contract of adhesion. Nyhart alleges that he lacked bargaining power over the terms of the lease because he deeded his property to Hutton before the parties drafted and executed the lease agreements. (Doc. 39 at 22-23). Nyhart argues that Hutton stood superior in bargaining power by the aid of attorneys in drafting the documents at issue, whereas Nyhart was a vulnerable and "unsophisticated" party without the benefit of attorney representation. *Id.* at 23.

Hutton disputes application of the concept of unconscionability here because he does not seek to enforce the 1000x rent Holdover Provision. (Doc. 67 at 13). Hutton similarly claims that Nyhart actually held the superior bargaining power during the negotiation and signing of the Security Agreement. *Id.* Questions regarding the unconscionability of the allegedly adhesive lease term and who held the superior bargaining power present disputed facts that must be resolved at trial. The Court denies Nyhart's motion for summary judgement as applied to any unconscionability defense.

F. Mont. Code Ann. § 70-27-108(2)

Unlawful detainer exists when a tenant continues in possession without permission of the landlord after default on the payment of rent and after service

upon such tenant of a notice to pay rent or quit.  Mont. Code Ann. § 70-27-108(2).

The Court denies Nyhart's motion for summary judgment on the affirmative

defense.  This issue will be resolved at trial following further factual development.

### I.  Nyhart's Motion in Limine (Doc. 44)

Nyhart has filed a motion in limine that seeks to exclude the following

evidence: 1) settlement communications between the parties; and 2) prior litigation

in which Nyhart has been involved.  Hutton opposes the motion.  (Doc. 71).

A motion in limine serves as a procedural mechanism to limit in advance

testimony or evidence in a particular area.  *Frost v. BNSF Ry. Co.*, 2018 F. Supp.

3d 1122, 1133 (D. Mont. 2016).  A motion in limine "reduces the likelihood that

unduly prejudicial evidence will ever reach the jury."  *Id.*  The district court

possesses broad discretion in considering a motion in limine.  *Id.*

Federal Rule of Evidence 408 prohibits the admission of compromise and

settlement communications.  Settlement communications should be excluded if

offered "either to prove or disprove the validity or amount of a disputed claim or to

impeach a prior inconsistent statement."  Fed. R. Evid. 408(a).  Rule 408 serves to

promote "the public policy of favoring the compromise and settlement of

disputes."  *Id.*  Rule 408(a) prohibits introduction of offers of compromise and

settlement evidence of "conduct or statements made in compromise negotiations

only if introduced for the purpose of establishing liability for, invalidity of, or amount of a claim." *Id.*

Nyhart alleges that Hutton's and Nyhart's settlement communications are irrelevant, overly prejudicial, and inadmissible pursuant to Federal Rules of Evidence 402, 403, 408, and 410. (Doc. 45 at 6-8). Hutton argues that the communications at issue do not represent communications for settlement, but instead represent business communications and therefore fall outside the scope of Rule 408.

The Court defers until trial a final decision as to whether the disputed communications represent settlement negotiations and to what extent the communications may be presented to the jury. Evidence regarding the context in which the statements were made, the alleged intent of the parties as expressed in the statements, and the relevance of the statements will be considered.

Nyhart seeks also to exclude evidence of Nyhart's prior contract dispute. (Doc. 45 at 9). Nyhart claims that Hutton solicited this information during Nyhart's deposition simply to attack Nyhart's character and attempt to influence the jury's perception. *Id.* Hutton argues that the previous litigation is admissible and relevant because it demonstrates Nyhart's knowledge, sophistication and experience with real estate contracts. (Doc. 71 at 16). The Court similarly defers

until trial a final decision as to whether the previous litigation is relevant and to what extent this dispute may be presented to the jury.

The nature of Nyhart's previous litigation in relation to the dispute at issue here will be considered. The Court questions whether the mere fact that counsel represented Nyhart in negotiating and drafting a real estate contract thirty years ago warrants admission of the prior litigation. Hutton must establish the similarity between the two disputes, evidence of Nyhart's involvement with his counsel in the previous case, and its relevance to this action.

## II. Nyhart's Motion for Sanctions (Doc. 42)

Nyhart has filed a motion for sanctions, including the termination of this litigation based on what he characterizes as discovery abuse, litigation misconduct, forgery, and perjury. Hutton opposes the motion. (Doc. 72). Nyhart's motion involves Hutton's production of an email that refers to an attached letter. The letter represents the sole piece of written evidence regarding the alleged terms of an extension of the Farm Lease beyond its original five-year term.

The district court possesses inherent authority to impose sanctions if a party has "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Anheuser-Busch, Inc. v. Nat. Beverage Dist.*, 69 F.3d 337, 348 (9th Cir. 1995). The district court evaluates whether sanctions are warranted "due to willfulness, fault, or bad faith." *Id.*

Nyhart contends that the email that Hutton produced during discovery proves to be a forgery or a fraudulent email. (Doc. 43 at 5). Nyhart argues that the misspelled email address at the top of the email, the alleged "cut-off" letters in the heading, and the unusually cramped margin support the allegation of forgery and support the imposition of sanctions. *Id.* 5-6. Hutton claims that the email is a draft that he never sent to Nyhart and lacks any relevance to the dispute. (Doc. 72 at 7).

The Court lacks sufficient evidence at this point to support the imposition of sanctions that Nyhart seeks. Hutton certainly produced this email during the discovery process. Despite Hutton's claim of irrelevance, the email potentially represents a significant piece of evidence for the jury to use in determining whether the parties agreed to an extension of the Farm Lease. The Court defers a final ruling on this issue until trial.

### III. Hutton's Motion in Limine (Doc. 46)

Hutton has filed a motion in limine that seeks to exclude the following evidence and testimony at trial: (1) the email that comprises the subject of Nyhart's motion for sanctions; (2) the testimony of Charles R. Gappmayer; and, (3) any testimony regarding emotional distress damages. Nyhart opposes the motion. (Doc. 65).

The Court has declined at this point to impose sanctions on Hutton for alleged discovery abuse regarding the email. Hutton produced the email during the

discovery process. The email, and the attached letter that Hutton claims to have mailed through the postal service, go to the very heart of the issue in controversy – whether the parties agreed on terms to an extension of the Farm Lease. The jury should decide the weight to attach to this email and Gappmeyer's testimony could assist the jury in making this decision. The Court remains free, if necessary, to instruct the jury on any extraneous issues that may arise from this testimony.

With regard to damages for emotional distress, Nyhart concedes that he will not seek emotional damages arising from this litigation either from him or his wife, Sandy Nyhart. He argues nevertheless that he should be permitted to testify as to the emotional toll that the dispute has taken on him. The Court agrees and will allow Nyhart to testify as to any emotional distress that he alleges to have suffered as a result of this dispute.

### IV.    Hutton's Cross-Motion for Summary Judgment (Doc. 66)

Hutton has filed a cross-motion for summary judgment regarding the five affirmative defenses asserted in Nyhart's own motion for partial summary judgment. Nyhart opposes the motion. (Doc. 91). As discussed above, the existence of genuine issues of material fact preclude summary judgment on these five affirmative defenses. The Court denies Hutton's cross-motion for summary judgment.

## V. Hutton's Motion for Leave to Depose Bob Giles (Doc. 77)

Hutton has filed a motion for leave to depose Bob Giles. Nyhart opposes the motion.

Hutton admits that Nyhart previously had disclosed Giles as a potential witness and a person with general knowledge of the sale/leaseback arrangement between Hutton and Nyhart and their continued business relationship. (Doc. 78 at 3). Hutton concedes that he failed to depose Giles due to his lack of knowledge of any "pertinent information." *Id.* at 4.

Giles filed a first affidavit on January 5, 2018. (Doc. 6-3). Giles then attested that he possessed knowledge regarding the introduction of Hutton to Nyhart and the place of Nyhart's residency. *Id.* Giles further attested that he possessed general knowledge regarding the business relationship between Hutton and Nyhart, but as to its scope an extent he acknowledged being "not entirely privy" to this information. *Id.* at 2.

Hutton represents that Nyhart submitted a second affidavit from Bob Giles on January 11, 2019, two months after the close of discovery on November 9, 2018. (Doc. 64-2). Giles attests in his second affidavit that "Hutton promised to Nyhart that he would replace the existing pivot." *Id.* Giles further attests that "[b]etween 2004 and 2016, I recall Hutton reiterating his promise to replace the existing pivot several times." *Id.*

The Court could locate no response to this motion from Nyhart in the docket entries. The parties failed to address this issue at the hearing on February 28, 2019. The Court deems it appropriate in light of the discrepancies between the two affidavits submitted by Giles regarding his knowledge of Hutton's intent to replace the pivot irrigation system on the agricultural property to allow Hutton to depose Giles at this late date. Hutton must depose Giles no later than April 20, 2019.

## CONCLUSION

Many disagreements exist about what actually transpired throughout the past fourteen years. Both parties allege significant facts that, if true, weigh heavily in favor of one side or the other. These disputed collective facts must be reserved for the jury to determine at trial. The remaining issues of Limine (Doc. 44) and Sanctions (Doc. 42) will be reserved and determined at trial following further factual development.

## ORDER

**IT IS ORDERED** that Hutton's Motion for Partial Summary Judgment (Doc. 33) is **GRANTED** in part and **DENIED** in part. Hutton's motion for summary judgment as to Nyhart's Fifth Affirmative Defense of Accord and Satisfaction is **GRANTED**. Hutton's Motion for Summary Judgment as to Nyhart's Counterclaims, Nyhart's Seventh Affirmative Defense of Failure of

Consideration/Excuse of Performance, and Nyhart's Eleventh Affirmative Defense pursuant to Mont. Code Ann. § 70-27-108(2) are **DENIED**.

**IT IS ORDERED** that Nyhart's Motion for Summary Judgment by Application of Affirmative Defenses (Doc. 38) is **DENIED**.

**IT IS ORDERED** that a final decision on Nyhart's Motion in Limine (Doc. 44) will be **DEFERED** until trial.

**IT IS ORDERED** that a final ruling on Nyhart's Motion for Sanctions (Doc. 42) will be **DEFERED** until trial.

**IT IS ORDERED** that Hutton's Motion in Limine (Doc. 46) is **DENIED**. The jury will determine the weight to attach to the email and Gappmeyer's testimony. The Court will allow Nyhart to testify as to any emotional distress he alleges to have suffered as a result of this dispute.

**IT IS ORDERED** that Hutton's Cross-Motion for Summary Judgement (Doc. 66) is **DENIED**.

**IT IS ORDERED** that Hutton's Motion for Leave to Depose Bob Giles (Doc. 77) is **GRANTED**. Hutton must depose Giles no later than April 20, 2019.

DATED this 19th day of March, 2019.

Brian Morris
United States District Court Judge